C. Furness Hately; Defendant in Error, *vs.* John W. Kiser, Plaintiff in Error.

*Opinion filed February 23, 1912.*

1. Brokers—*stock broker not required to take out license under Chicago ordinance.* Section 194 of the Chicago ordinances, which defines a broker as "one who is engaged, for others, in negotiating contracts relative to property with the custody of which he has no concern," does not include stock brokers, as the certificates of stock, bonds and other securities bought and sold by a stock broker are, in a practical sense, the property dealt with, even though they are, technically, only evidence.

2. Same—*giving order does not estop a customer from denying that stock was bought by broker.* The facts that a customer gave a stock broker an order to buy certain shares of stock, and that the broker thereafter reported the stock as having been bought, impose no liability upon the customer unless the stock was, in fact, bought, and do not estop him, in a suit by the broker, from insisting upon proof that the stock was bought by the broker.

3. Same—*what does not prove certificates of stock were bought.* A report from a stock broker's agent to the effect that he has bought certain certificates of stock, as directed by the broker, is mere hearsay evidence where the agent is not produced as a witness; and if all the evidence tending to prove such purchase is of that character, and no witness testifies who has any personal knowledge of the transaction or has ever seen the certificates, the purchase is not proved.

4. Trial—*motion to direct a verdict—fragmentary statements not considered apart from qualifying recitals.* While the plaintiff, upon the consideration of a motion to direct a verdict for the defendant, is entitled to all reasonable inferences in his favor which may legitimately be drawn from the evidence, yet he is not entitled to have fragmentary statements considered apart from qualifying recitals.

5. Evidence—*force of question and answer in interrogatory in municipal court.* A question and answer in an interrogatory filed by the defendant in the municipal court, to be answered by the plaintiff under oath, has no more force than the deposition or oral testimony of the plaintiff; and a statement in such answer to the effect that certain stock was kept in the possession of the plaintiff's agent, subject to plaintiff's order, cannot be accepted as proof of that fact, where the plaintiff's oral testimony shows that he had no personal knowledge of the matter but based his statement upon his agent's business reports.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. JOHN W. HOUSTON, Judge, presiding.

C. H. POPPENHUSEN, and JOSEPH L. McNAB, (S. S. GREGORY, of counsel,) for plaintiff in error.

IRA C. WOOD, (W. W. GURLEY, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The defendant in error recovered against the plaintiff in error, in an action of assumpsit in the municipal court of Chicago, a judgment for $5836.43, which the Appellate Court affirmed, and the record has been brought here by a writ of *certiorari* for review.

The plaintiff, who is the defendant in error here, was a stock broker in Chicago, and the suit was to recover for a loss incurred in the purchase and sale by the plaintiff, for the defendant, of two hundred shares of the capital stock of the International Mercantile Marine Steamship Company, and for brokerage fees and interest on advances. Two questions, only, in the view we take of the case, require consideration: First, whether the plaintiff, being a stock broker, was required by the city ordinance to obtain a license before engaging in that business; second, whether there was evidence of the actual purchase of the stock for the defendant by the plaintiff.

By section 192 of the city ordinances it is declared to be unlawful for any person to engage in the business or act in the capacity of a broker within the city without first obtaining a license therefor. Section 194 defines a broker as "one who is engaged, for others, in negotiating contracts relative to property with the custody of which he has no concern." That the plaintiff was a stock broker and that

253—19

he would have been required to obtain a license by section 192 of the ordinance in the absence of the definition contained in section 194, is settled by the case of *Banta* v. *City of Chicago,* 172 Ill. 204. That definition is in the language of Mr. Justice Walker in the case of *Braun* v. *City of Chicago,* 110 Ill. 186, and was sufficiently accurate for that case. One of the defendants there was doing business as a produce broker and the other as a real estate broker. A few years later the *Banta case* arose, and it was held that a person was a broker who bought and sold stocks, bonds or other securities for others for a commission, and, as such broker, might contract either in his own name or that of his principal, might receive, hold or transfer the securities which were the subject matter of the contract, and might pay or receive payment for securities bought or sold. The definition of a broker contained in the ordinance in the latter case did not differ from that in the former. After the decision in the latter case, however, the ordinance was revised and the definition limited so that the ordinance now applies only to cases where the contracts relate only to property with the custody of which the agent making the contract has no concern. While technically it may be said that the certificates of stock, bonds and other securities are only evidence and the possession of them is not the custody of the property, yet practically they stand for the property and in the usual form of speech are regarded as the property. The plaintiff was not required by the ordinance to obtain a license.

The declaration alleged, among other things, that the defendant employed the plaintiff to purchase the stock and that the plaintiff did purchase it; that it was agreed that at all times the stock should be held by the plaintiff for and on account of the defendant and subject to his order, upon the payment of the cost, with interest thereon and plaintiff's fees and charges. It was incumbent on the plaintiff to prove that he bought the stock and held it according to the

agreement. The defendant moved the court, at the proper time, to instruct the jury to find a verdict in his favor, and now argues that the court erroneously refused such instruction because there was no evidence legally tending to prove that the plaintiff bought the stock. On such a motion the plaintiff is entitled to the benefit of every presumption that can legally be drawn from the evidence in his favor, disregarding any contradictory evidence. So considered, the evidence shows that on December 5, 1905, the defendant ordered the plaintiff to buy the stock, and the defendant at once caused the order to be telegraphed to Bartlett, Frazier & Co., members of the New York Stock Exchange, to execute. Notice was received from Bartlett, Frazier & Co. of the purchase of the stock, and within ten minutes after the order was given the plaintiff notified the defendant that the purchase was made and at what prices. A written notice was mailed to the defendant. Monthly statements were sent to him and the plaintiff and defendant had frequent conversations regarding the stock, and the defendant ordered the plaintiff to sell when he could do so without loss. The plaintiff called on the defendant for $5000 and asked for instructions as to the stock, when the defendant repudiated the whole transaction. No witness testified who, so far as the evidence shows, had ever received or seen any certificate of stock, or had any personal knowledge of any contract for the purchase of stock, or of when, where, how, with whom or for what consideration any such contract was made. If any such purchase was made it was made in New York, but no opportunity was given for the cross-examination of anyone who was within a day's journey of that city at the time. Reports, telegrams, orders and notices were offered in evidence but no witness testified as to what actually occurred at the other end of the line, and it is on what actually occurred at that end that the plaintiff's whole case rests. The defendant is subject to no estoppel. He was notified that the stock was bought for him, but he

is not liable unless it was. No burden of proof rests on
him. He is under no obligation to offer anything, but the
burden is on the plaintiff to make out his case by legal evi-
dence. The latter testified that Bartlett, Frazier & Co. had
bought the stock and carried it for him and kept it in their
custody, but he further testified that he had no personal
knowledge about it, never saw the stock and knew nothing
about it except such information as he received from Bart-
lett, Frazier & Co. He made no claim to any knowledge,
but his testimony as to the entire transaction of the pur-
chase, carrying and sale of the stock was hearsay.

The defendant, in accordance with section 32 of the
Municipal Court act, filed interrogatories to be answered
by the plaintiff under oath. The ninth of these, and the
answer to it, were offered in evidence by the defendant and
were as follows:

"*Ninth*—Did you, on the 5th day of December, A. D.
1905, or at any time subsequent thereto, and if so, when,
receive from anybody a certificate or certificates for two
hundred shares of the preferred stock of the International
Mercantile Marine Steamship Company, to hold for the
said defendant? If so, from whom? What did you do
with the said stock? Where was it kept prior to the said
15th day of November, 1907, and what, then, was done
therewith?

Ans.—"The plaintiff did not personally hold in his
possession said certificates of shares of stock. From the
5th day of December, 1905, to the 14th day of November,
1907, they were in the possession of said Bartlett, Frazier
& Carrington, subject to the order of the plaintiff and for
his account."

It is insisted that this answer is legal evidence tending
to prove the purchase of the stock in New York. The
manifest purpose of introducing it was to show that the
plaintiff had never had the certificates in his possession,
but the answer tended to show further that they were held

for his account in New York. On the face of this single answer, excluding all the other testimony of the witness, it appeared that the certificates were in the possession of the plaintiff's agent, subject to his order. But the evidence can not be considered in that way. While the plaintiff is entitled to all the reasonable inferences in his favor which may legitimately be drawn from the evidence, he is not entitled to have fragmentary statements considered apart from qualifying recitals. The introduction of the interrogatory and answer was unnecessary. The witness had already testified to precisely the same thing and that he had no personal knowledge whatever in regard to the matter. His testimony is conclusive on this point and there is no evidence tending to show that he had any personal knowledge. The answer added nothing to what had already been told. The interrogatory and answer were of no more force than if contained in a deposition, and a deposition would have had no more force than the oral testimony of the witness. The substance of the testimony, in whatever form produced, was that the witness had no knowledge of the purchase and holding of the stock but had received information from his agent in the ordinary course of business. This was only hearsay, which the general rule of the law rejects. Such evidence requires credence to be given to a statement made by a person who is not subjected to the ordinary tests enjoined by law for ascertaining the correctness and completeness of his testimony. Its value is further lessened by the probability that the statements testified to were imperfectly heard, were misunderstood, were not accurately remembered or have been perverted. For these reasons, as well as for reasons of public interest and convenience, the law rejects all hearsay reports of transactions, whether verbal or written, given by persons not produced as witnesses. (1 Greenleaf on Evidence, sec. 124.)

The defendant was entitled to the plaintiff's statement that he had never had possession of the certificates. The

statement which accompanied it was not in the nature of secondary evidence or evidence which might under some circumstances become competent but in view of the witness' other testimony was absolutely incompetent to prove the issue. That statement, and others of like character, were the only basis for finding that the stock had been purchased, as alleged in the declaration. The defendant's motion to direct a verdict in his favor should therefore have been sustained.

The judgments of the Appellate Court and of the municipal court are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*