BANK OF LYONS, Plaintiff-Appellant, *v.* ALVIN A. SCHULTZ *et al.*, Defendants—(MARY SCHULTZ, Defendant-Appellee.)

(No. 59189;

First District (4th Division)—September 11, 1974.

Hoffman & Davis, of Chicago, for appellant.

Edward J. Barrett, of Chicago, for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

This action was begun by the Bank of Lyons on April 13, 1962, as a creditor's suit to enforce a judgment against Alvin Schultz for $61,038.94. Named as defendants were Alvin Schultz, Mary Schultz, his former wife and the present appellee, several insurance companies that had issued policies on the life of Alvin Schultz, and others not related to this appeal. Alvin Schultz died during the pendency of the action. On July 19, 1963, the plaintiff was given leave to amend its complaint by adding a second count. This alleged that Alvin Schultz and Mary Schultz had conspired to defraud the plaintiff of $240,301.87 and sought, among other relief, a decree enjoining the insurance companies from paying the death benefits under any of the policies. The court granted the injunction and ordered the companies to file interpleader actions and to deposit the proceeds of the policies with the clerk of the circuit court. Pursuant to this decree, three companies filed interpleader actions and deposited a total of $61,525.77 with the court. Mary Schultz moved for summary

judgment, and on September 24, 1965, the court entered an order granting her motion. In the same order, the court found that the injunction had been wrongfully issued, and granted Mary Schultz leave to file a suggestion of damages. It also directed the clerk to deliver to Mary Schultz all of the funds on deposit with him in excess of $30,000.

In a second order entered on September 24, 1965, the court granted the plaintiff leave to amend its complaint a second time by adding a third count in which it sought to recover $24,387.06 from Mary Schultz. This sum represented the losses allegedly due to a personal check drawn by Mary Schultz and credited to her account with the plaintiff, but returned by the drawee bank uncollected ($10,200) and various cashier's checks issued by the plaintiff to Mary Schultz without consideration. This portion of the complaint was referred to a master in chancery. In the proceeding before the master, Mary Schultz moved for judgment at the close of the plaintiff's case, and the master recommended in his report that her motion be granted. On September 18, 1969, the court entered a decree approving the master's report and granting the motion of Mary Schultz for judgment. The plaintiff appealed from this decree, and this court affirmed the judgment in favor of Mary Schultz as to the personal check on the ground that the plaintiff had not met its burden of proving that Mary Schultz had not suffered a loss as a result of its failure to provide timely notice that the check had been dishonored, but reversed and remanded the judgment as to the cashier's checks for further proceedings on the ground that the trial court had not made sufficient findings of fact to sustain its conclusion that Mary Schultz was a holder in due course of the checks. See *Bank of Lyons v. Schultz* (1971), 1 Ill.App.3d 495, 275 N.E.2d 277.

On February 16, 1972, which was after the remand, Mary Schultz filed a petition seeking release of the $30,000 that remained on deposit with the clerk of the circuit court. The plaintiff filed a cross petition seeking the same funds and requesting that the court vacate its finding that the injunction was wrongfully issued and withdraw the leave given Mary Schultz to file a suggestion of damages. On June 21, 1972, the court entered an order granting the petition of Mary Schultz and denying the cross petition of the plaintiff.

On August 1, 1972, Mary Schultz filed her suggestion of damages, claiming $17,442.38 interest, $5,236.25 attorney's fees, $1,184.61 court costs and court reporter's charges, and $1,278.62 reimbursement for fees paid to the master who originally heard evidence on count III of the complaint. The court heard evidence on the suggestion of damages and on March 6, 1973, entered an order awarding Mary Schultz $17,442.38 interest, $4,967.50 attorney's fees, $415.02 court costs, and $1,278.62 reim-

bursement for the master's fees. The court entered judgment against the plaintiff for the total amount of the award. In the same hearing the court also heard evidence on the remanded portion of count III of the complaint (concerning the cashier's checks) and at its conclusion entered judgment in favor of Mary Schultz.

The plaintiff instituted the present appeal on April 4, 1973. It appealed from the following orders: (1) the order finding that the injunction was wrongfully issued, directing payment of part of the funds on deposit with the clerk of the court to Mary Schultz, and granting Mary Schultz leave to file a suggestion of damages; (2) the order granting Mary Schultz's petition for the release of the balance of the funds and denying the plaintiff's cross petition; (3) an order, entered September 29, 1972, striking plaintiff's interrogatories to Mary Schultz concerning whether she had suffered any loss as a result of the plaintiff's failure to give her timely notice that the $10,200 check had been dishonored; (4) an order, entered September 29, 1972, denying the plaintiff's motion for leave to reopen its proof with respect to the $10,200 check; (5) the order awarding Mary Schultz judgment on her suggestion of damages and denying the plaintiff's motion for judgment at the close of the proof on the suggestion of damages; and (6) the order granting Mary Schultz judgment on the remanded portion of count III of the complaint. On appeal the plaintiff contends that (1) it was entitled to the proceeds of the insurance on the life of Alvin Schultz; (2) the injunction of July 19, 1963, was not wrongfully issued; (3) Mary Schultz is not entitled to recover anything on her suggestion of damages; (4) Mary Schultz did not succeed in establishing that she was a holder in due course of the cashier's checks issued by the plaintiff because she did not establish that she took them for value; and (5) that the court had the authority to permit the plaintiff to reopen its discovery and proof relating to the $10,200 check.

We first consider the plaintiff's contention that it was entitled to the proceeds of the insurance on the life of Alvin Schultz. Although the notice of appeal states that the plaintiff seeks reversal of both the order of September 24, 1965, directing payment to Mary Schultz of all the proceeds in excess of $30,000 and the order of June 21, 1972, granting Mary Schultz's petition for release of the balance, the plaintiff's argument concerns only its entitlement to the $30,000 that remained on deposit after entry of the order of September 24, 1965. It argues that these funds were impressed with an equitable lien in its favor and therefore that the trial court erred in decreeing that Mary Schultz had a vested interest in them and was their sole owner and that, in addition, they were exempt from execution, attachment, garnishment or other process by virtue of section 238 of the Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 850).

■■ The present action was begun as a creditor's suit. Such a suit creates an equitable lien upon all the property owned by the debtor at the time that it is commenced. (*First National Bank v. Gage* (1879), 93 Ill. 172.) The equitable lien so created survives the subsequent death of the debtor and is superior to interests in the property that arise upon, and by reason of, his death, the theory being that, once having attached, the lien follows the property into the hands of the debtor's heirs or devisees. (*Thomas v. Richards* (1958), 13 Ill.2d 311, 148 N.E.2d 740.) We agree, then, with the plaintiff's conclusion that upon the filing of its suit, all of Alvin Schultz's assets were subjected to an equitable lien in favor of the plaintiff, which was not extinguished by Alvin Schultz's death.

■■ It does not follow, however, that this lien attached to the proceeds of the insurance on Alvin Schultz's life. It is recognized, both in Illinois and elsewhere, that the proceeds of life insurance are not an asset of the insured and that, in fact, they do not come into existence until after his death. (*Vieth v. Chicago Title & Trust Co.* (1940), 307 Ill.App.99, 30 N.E.2d 126; 2A Appleman, Insurance Law and Practice § 1341 (1966).) Thus it seems clear that no lien could have attached to the proceeds of the policies at the time that the plaintiff commenced its suit because they were neither in existence nor an asset of the debtor. (See *First National Bank v. Gage* (1879), 93 Ill. 172, wherein the court held that the lien of a creditor's bill attached only to property owned by the debtor at the time that the bill was filed.)

■■ Furthermore, the rule is that immediately upon the death of the insured, the beneficiary named in the policy obtains a vested and absolute right to the proceeds, which is subject only to contrary provisions in the policy. (*Myers v. Modern Woodmen of America* (1917), 205 Ill. App. 45; *Hodalski v. Hodalski* (1913), 181 Ill.App. 158; 2 Appleman, Insurance Law and Practice § 921 (1966).) Therefore Mary Schultz, who was the named beneficiary in the present policies, obtained an absolute right to receive the proceeds immediately upon the death of Alvin Schultz. Based upon this, it is our conclusion that the trial court was correct in finding that the proceeds were not subject to any lien in favor of the plaintiff and were the sole property of Mary Schultz.

■■ We have examined the cases cited to us on this point by the plaintiff and find that they are inapplicable to the present case in that, while all concern creditor's bills generally, none concerns the proceeds of insurance on the life of the debtor. Because the foregoing reasoning is sufficient to sustain the trial court's findings, we deem it unnecessary to consider the plaintiff's contention that the court erred in finding that the proceeds were exempt from process under section 238 of the Insur-

ance Code (Ill. Rev. Stat. 1973, ch. 73, par. 850). That portion of the order of September 24, 1965, directing the clerk of the circuit court to pay Mary Schultz the funds on deposit in excess of $30,000 and that portion of the order of June 21, 1972, directing the clerk of the circuit court to pay Mary Schultz the remaining $30,000 and denying the cross petition of the plaintiff for the same funds are affirmed.

■■ We next consider whether the injunction of July 19, 1963, was wrongfully issued. It is the position of Mary Schultz that the plaintiff is barred from appealing this point because it did not appeal within 30 days after entry of the order of September 24, 1965, which specifically found that the injunction had been wrongfully issued. In our view this argument is without merit because the present case is one involving multiple issues, only one of which was resolved by the order of September 24, 1965. Since the order did not contain an express finding by the trial court that there was no just reason for delaying an appeal, it was not appealable until all of the issues in the case had been finally adjudicated. (Ill. Rev. Stat. 1973, ch. 110A, par. 304(a).) This occurred on March 6, 1973. We hold, therefore, that the plaintiff is not barred from raising this issue in the present appeal.

■■ Concerning the injunction itself, the plaintiff argues simply that it was properly issued because section 49 of the Chancery Act (Ill. Rev. Stat. 1973, ch. 22, par. 49) expressly provides for the issuance of injunctions in creditor's suits to prevent the transfer of property belonging to the debtor, because our courts have recognized that the issuance of a temporary injunction is proper in such cases in order to maintain the status quo, and because it was necessary to protect the plaintiff's equitable lien in the insurance proceeds. We have already held that the plaintiff had no equitable lien in the insurance proceeds, and the mere fact that the issuance of an injunction has been held proper in certain appropriate cases does not lead to the conclusion that the injunction was properly issued in the present case. The record establishes that the court held a hearing at which it considered the affidavits of the parties with respect to count II of the complaint and heard the arguments of counsel. Following this, it made a specific finding that the injunction had been wrongfully issued and should be dissolved. The record does not disclose the precise reasons for this finding, but we can only assume that it was because the trial court determined from the information presented at the hearing that the plaintiff had not succeeded in establishing the alleged reasons for the issuance of the injunction. We have reviewed the record and are in accord. We hold, therefore, that the trial court correctly found that the injunction had been wrongfully issued, and we affirm that portion of the order of September 24, 1965, that so finds, and that portion

of the order of June 21, 1972, that denies the plaintiff's cross petition for modification of the order of September 24, 1965.

We next consider the contention that Mary Schultz was not entitled to recover anything upon her suggestion of damages. Section 12 of the Injunctions Act (Ill. Rev. Stat. 1973, ch. 69, par. 12) provides that "[i]n all cases where an injunction is dissolved  *  *  *  the court, after dissolving such injunction, and before finally disposing of the suit, upon the party claiming damages by reason of such injunction suggesting, in writing, the nature and amount thereof, shall hear evidence and assess such damages as the nature of the case may require  *  *  *." As stated in *Schien v. City of Virden* (1955), 5 Ill.2d 494, 126 N.E.2d 201, the purpose of this provision is to provide a summary means of assessing damages for the wrongful issuance of a temporary injunction which is dissolved prior to the entry of final judgment.

■■ The plaintiff argues first that Mary Schultz is not entitled to damages because the injunction was not wrongfully issued. We have discussed this contention previously and need not discuss it further. Second, the plaintiff argues that Mary Schultz is not entitled to recover damages under section 12 of the Injunctions Act because the injunction was not dissolved prior to a final judgment being rendered in the case. This argument is premised upon the fact that the order finding that the injunction had been wrongfully issued and granting Mary Schultz leave to file a suggestion of damages was contained in the same order that granted Mary Schultz summary judgment on count II of the complaint. It is the plaintiff's position that the summary judgment on count II constituted a final judgment on the merits. This argument is untenable. On the same day that the court entered its order finding that the injunction had been wrongfully issued, it entered an order allowing the plaintiff to amend its complaint to add a third count, and the cause continued to be litigated for some 8 more years while count III was tried, appealed, and retried upon remand. Moreover, the order of September 24, 1965, only required the clerk to turn over the insurance proceeds in excess of $30,000, necessitating the further petitions of both Mary Schultz and the plaintiff seeking the balance of the funds. In view of this and in view of our previous discussion concerning the applicability of Supreme Court Rule 304(a) to the present case, it is our opinion that final judgment was rendered on March 6, 1973, and we so hold.

■■ Third, the plaintiff argues that Mary Schultz was not entitled to recover any attorney's fees upon her suggestion of damages because all of the expenses that she incurred prior to the dissolution of the injunction were incurred in the general defense of count II of the complaint, and the expenses incurred after dissolution are not recoverable. It cites

*Landis v. Wolf* (1903), 206 Ill. 392, 69 N.E.103, and *Cromwell Paper Co. v. Wellman* (1959), 23 Ill.App.2d 263, 162 N.E.2d 500, as authority for this position. In our view, however, these cases turn on the failure of the defendant to distinguish between expenses incurred in the general defense of the suit and those incurred in the dissolution of the injunction. The rule, as stated in *Landis*, is that where counsel fees are necessarily incurred in procuring the dissolution of an injunction, they may be allowed as damages, but where dissolution of the injunction is only incidental to the defense of the action, and the counsel fees are incurred in defending the action, they cannot be assessed as damages.

In the present case, the only evidence concerning the attorney's fees sought by Mary Schultz was provided by her own counsel, who testified as an expert witness that the services rendered prior to September 24, 1965, were absolutely necessary to obtain dissolution of the injunction and that the services rendered after September 24, 1965, were necessary to obtain the release of the funds that remained on deposit with the clerk of the circuit court. This testimony is uncontradicted, and we cannot say that the court's award is against the manifest weight of the evidence.

■■ Fourth, the plaintiff contends that, assuming Mary Schultz is entitled to damages, she is entitled to interest on the insurance proceeds only from the date that the injunction was issued to the date on which the insurance companies deposited the proceeds with the clerk of the court pursuant to the orders entered on their bills of interpleader. The plaintiff offers no authority for this proposition, and indeed, we are aware of none. We are of the opinion that the order of the trial court awarding interest from the date of Alvin Schultz's death (May 20, 1963) to the date that the clerk of the circuit court paid the last of the funds on deposit with him to Mary Schultz (June 26, 1972) was proper.

Finally, the plaintiff states that there has been a final judicial determination that Mary Schultz should in equity pay 25 percent of the master's fees. The order entered September 18, 1969, provided, among other things, that the clerk of the circuit court should turn over to Mary Schultz, the balance of the funds on deposit with him, less $1,278.62, which represented Mary Schultz's liability for her share of the master's fees. Thus, the plaintiff argues, the court erred in awarding Mary Schultz reimbursement of this amount on her suggestion of damages. This argument overlooks the fact that the hearing on the suggestion of damages was an entirely separate proceeding and that section 12 of the Injunctions Act allows for the award of all damages occasioned by the wrongful entry of the injunction. We find the reimbursement for master's fees to have been proper.

We next consider the plaintiff's contention that the trial court erred in entering judgment for Mary Schultz on the remanded portion of count III of the complaint. As we have noted above, this court held in *Bank of Lyons v. Schultz* (1971), 1 Ill.App.3d 495, 275 N.E.2d 277, that Marty Schultz's testimony was not sufficient to sustain the finding that she was a holder in due course of the cashier's checks under section 52 of the Negotiable Instruments Act (Ill. Rev. Stat. 1955, ch. 98, par. 72), which was in effect at the time of the transactions in question, but that, inasmuch as all of her testimony was given while testifying as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60), the cause should be remanded and she given an opportunity to develop her own evidence on the point. Section 52 provides that, in order to qualify as a holder in due course, a holder must take an instrument in good faith, for value, and without notice of an infirmity or defect in the title of the person negotiating it. In the present appeal the plaintiff apparently concedes that Mary Schultz established that she took the checks from Alvin Schultz in good faith and without knowledge of any defects in his title. It argues, however, that she did not succeed in establishing that she gave full value for them. After reviewing the record, we conclude that the trial court's findings are adequately supported.

The substance of Mary Schultz's testimony was that from time to time she made loans totalling $10,292.55, in the form of checks drawn on her personal account, to or for the use of the Knox Steel and Wire Company, of which she and Alvin Schultz were the sole stockholders. She made these loans at Alvin Schultz's request and upon the promise that she would be repaid in full.

From 1956 through 1959 she received cashier's checks, drawn by the plaintiff, totalling $9,187.06, from Alvin Schultz in partial payment of the loans. She testified that she did not keep a running account of her loans to Knox Steel and Wire and could not tell how much was owed to her at any one time. However, the record establishes that by August 7, 1956, the date of the first cashier's check which was for $1150, she had advanced $4,787.55. By February 25, 1958, the date of the next cashier's check, which was for $1,800, she had advanced a total of $7,477.55, and by June 19, 1958, the date that she received all but the last of the checks, she had advanced a total of $10,292.55. Although she was unable to state precisely how much was owed her on the date of each cashier's check, we believe that the foregoing is sufficient to sustain the conclusion that the balance due her at any given time exceeded the value of the cashier's checks that she received. Therefore the trial court could have found that the cashier's checks were given in repayment of

420

the loan and hence were given for full value. (See *Manning v. McClure* (1865), 36 Ill. 490; Ill. Rev. Stat. 1955, ch. 98, par. 45.) As we have often said, the trial court, which hears and observes the witnesses, is in the best position to sift the evidence and determine questions of fact, and unless its findings are against the manifest weight of the evidence, they will not be disturbed by this court. (*Elliott v. Nordlof* (1967), 83 Ill.App.2d 279, 227 N.E.2d 547.) The judgment in favor of Mary Schultz on count III of the complaint is therefore affirmed.

Finally we consider the plaintiff's contention that the trial court erred in refusing to allow it to reopen its proof and discovery concerning the $10,200 personal check. In *Bank of Lyons v. Schultz* (1971), 1 Ill.App.3d 495, 275 N.E.2d 277, this court stated simply that the judgment in favor of Mary Schultz on the claim concerning the $10,200 check was affirmed. In our view this ended the litigation on the matter, and the trial court was without authority to reopen it. We find no error, therefore, in the order striking the plaintiff's interrogatories as to the check and denying its motion for leave to reopen its proof.

For the foregoing reasons, the orders appealed from are affirmed.

Affirmed.

ADESKO, P. J., and DIERINGER, J., concur.